NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| KEVIN L. WERTS, |
|---|
| Plaintiff, |
| v. |
| NANCY A. BERRYHILL, |
| Acting Commissioner of Social Security, |
| Defendant. |

Civil Action No.: 18-cv-3442

OPINION

**CECCHI, District Judge.**

## I. INTRODUCTION

Before the Court is Plaintiff Kevin L. Werts's appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Title II and Title XVI of the Social Security Act ("SSA" or the "Act"). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is vacated and the case is remanded for further administrative proceedings.

## II. BACKGROUND

### A. Factual Background

Plaintiff, an adult male, was born on January 3, 1972. (Tr.[1] at 21). Plaintiff possess at least a high school education, (*id.* at 40), and has previously worked as a delivery person, gas station attendant, food service manager, and group home orderly. (*Id.* at 44-54). On March 8, 2014,

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 7).

1

Plaintiff suffered a brain aneurysm. (*Id.* at 41). Plaintiff testified that following his aneurysm, he suffered cognitive decline that interfered with his ability to work in even unskilled positions. (*Id.* at 38). Plaintiff further testified that since his aneurysm, he needs to wear dark sunglasses because he is sensitive to light and exposure causes him severe headaches. (*Id.* at 56-57). He also indicated that he has experienced sensitivity to noise. (*Id.* at 61-62). Plaintiff further indicated that some days he has such severe headaches that he is unable to get out of bed. (*Id.* at 57). Additionally, Plaintiff avers that he is unable to sit down for long periods of time, because if he does he will inadvertently fall asleep. (*Id.* at 63). Plaintiff claims that some days his balance and coordination are so poor that he has "to reteach [himself] how to walk." (*Id.* at 71). Finally, Plaintiff also testified that he suffers from a mood disorder. (*Id.* at 71-72).

### B. Procedural Background

On April 22, 2014, Plaintiff filed an application for a period of disability and DIB pursuant to Title II of the SSA. (*Id.* at 234). That same day, Plaintiff also applied for SSI pursuant to Title XVI of the SSA. (*Id.* at 241). On August 27, 2014, Plaintiff's applications were initially denied. (*Id.* at 82). On May 23, 2015, Plaintiff's applications were once again denied on reconsideration. (*Id.* at 152). Plaintiff requested an ALJ hearing, and such hearing was conducted on April 10, 2017. (*Id.* at 32-81). On June 23, 2017, the ALJ issued his opinion concluding that Plaintiff was not disabled within the meaning of the SSA at any point from his alleged onset date of March 8, 2014 through the date of the decision. (*Id.* at 12-22). Plaintiff next sought review by the Appeals Council, which denied review on January 26, 2018. (*Id.* at 1). Thereafter, Plaintiff instituted this action seeking judicial review of the ALJ decision.

## III. LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining Disability

In order to be eligible for benefits under the SSA, a plaintiff must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

3

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for SSA purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C. Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the Plaintiff has an impairment that limits his ability to work. *Id.* Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the

4

impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform his past relevant work. *Id.* Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

## IV. DISCUSSION

### A. Summary of the ALJ decision.

At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA through December 31, 2016 and had not engaged in substantial gainful activity since March 8, 2014, his alleged onset date. (Tr. at 14). At step two, the ALJ found that Plaintiff suffered from three severe impairments: status-post left craniotomy for clipping of a ruptured middle cerebral artery, cognitive disorder, and generalized anxiety non-specified. (*Id.*). However, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.* at 15). The ALJ then found that Plaintiff possessed the RFC to perform light work as defined by 20 CFR §§ 404.1567(b) and 416.967(b), with additional limitations. (*Id.* at 17).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 20). At step five, the ALJ found that in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff

could perform. (*Id.* at 21). Thus, the ALJ concluded that Plaintiff was not disabled, within the meaning of the SSA, at any point from the alleged onset date through the date of decision. (*Id.* at 22).

**B.     Analysis**

Plaintiff argues that this case should be remanded to the ALJ for further consideration of expert opinion evidence which, Plaintiff believes, tends to suggest a greater level of impairment than recognized by the opinion below. (ECF No. 11 at 26-33). Specifically, Plaintiff avers that the ALJ unreasonably accorded limited weight to the opinion of Pavel P. Tishuk, M.D.

In reaching his RFC determination, the ALJ found that although Plaintiff's medically determinable impairments could be expected to cause symptoms, the Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not "entirely consistent with the medical evidence and other evidence in the record." (Tr. at 18). The ALJ acknowledged that the medical record showed Plaintiff to have experienced cognitive decline and problems with memory and concentration following his aneurysm, however the ALJ nonetheless rendered an RFC consistent with an ability to do simple, unskilled light work. (*Id.*). For his conclusion regarding Plaintiff's RFC, the ALJ relied on relatively mild clinical findings from the months following Plaintiff's aneurysm, which supported some cognitive decline but appeared to the ALJ to be generally consistent with limitations lesser than complete disability. (*Id.*). Opinion evidence tending to suggest more serious limitations was given only limited weight. (*Id.* at 19-20). Dr. Tishuk's opinion was among the evidence accorded lesser weight.

On October 28, 2016, Plaintiff's treating neurologist, Dr. Tishuk, completed a form titled "Organic Mental Disorders Treating Physician Data Sheet." (*Id.* at 850-853). On this form, which appears to have been devised by Plaintiff's counsel, Dr. Tishuk provided an evaluation of

Plaintiff's condition, symptoms, and limitations. In that document, Dr. Tishuk indicated that Plaintiff exhibited, among other symptoms, memory impairment; changes in personality; and disturbance of concentration, attention, or judgment. (*Id.* at 851). On the severity of Plaintiff's resulting limitaitons, Dr. Tishuk opined that Plaintiff's condition was the source of marked restriction of activities of daily living; marked difficulties in social functioning; and marked difficulties in maintaining concentration, persistence, or pace. (*Id.*). Dr. Tishuk further indicated that Plaintiff suffered from a chronic disorder of at least two years' duration which caused more than a minimal limitation of ability to do basic work activities and a residual disease process which resulted in "such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause [Plaintiff] to decompensate." (*Id.*).

Where, as here, the record contains conflicting medical evidence, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). "The ALJ must consider all the evidence and give some reason for discounting the evidence []he rejects." *Id.* (citing *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983). Here, The ALJ afforded Dr. Tishuk's opinion "some weight," but did not accept his conclusions about the severity of Plaintiff's limitations:

> Dr. Tishuk essentially indicated that the claimant met the above-cited listings (Exhibit 26F). While there is no doubt the claimant's impairments are severe, it does not appear to be listing level. For instance, the doctor notes marked limitations in activities of daily living, but the record shows otherwise. For instance, the claimant reported being able to engage in house hold chores (taking out the trash and cooking), doing lawn work with use of ear plugs and dark glasses, manage money, travel independently using GPS, read, and use a computer (Exhibit 20F). The claimant also cited having good family relations and friends, which contradicts marked impairment in maintaining social functioning. Further, being alert and oriented x3 and intact expressive/receptive skills, and normal thought processes. Accordingly, some weight is given to this opinion because the non-exertional limitations are present, but not to the extent stated by this doctor.

7

(Tr. at 19-20). Plaintiff contends that the ALJ's decision regarding the appropriate weight to be given to Dr. Tishuk's opinion was unreasonable and insufficiently explained. He therefore maintains that the ALJ's opinion should be vacated and the case remanded for further consideration of Dr. Tishuk's opinion. (ECF No. 11 at 31-32). The Court agrees.

The Court finds that the ALJ's decision to grant only "some weight" to Dr. Tishuk's opinion on the severity of Plaintiff's limitations was not supported by substantial evidence because review of the record indicates that the putatively contradictory medical evidence cited by the ALJ in reaching that decision did not actually contradict Dr. Tishuk's findings. First, the ALJ opinion suggests that Dr. Tishuk's credibility is undercut by tension between reports that Plaintiff was able to engage in certain chores (taking out the trash, cooking, etc.) and Dr. Tishuk's opinion that Plaintiff experienced marked limitations in activities of daily living. (Tr. at 19). For Plaintiff's daily activities, the ALJ relies on the report of Kim Arrington, Psy. D. In her April 29, 2015 report, Dr. Arrington wrote:

> On a daily basis, the claimant struggles to get out of bed, so he is missing dressing, bathing, and grooming. He does engage in household chores such as taking out the trash in [sic] cooking. He tries to do lawn work, but must wear military ear plugs and dark glasses. He is able to manage money and travel independently with a GPS. He is able to read and use a computer.

(*Id.* at 804). The record does not reflect, however, that the ALJ considered Plaintiff's limitations in performing such tasks before concluding these activities were inconsistent with marked limitations in activities of daily living. Dr. Arrington's report, the primary purpose of which was to evaluate Plaintiff for possible clinical depression, does nothing to explain the frequency with which Plaintiff is able to engage in such activities or limitations to his level of performance. For example, Dr. Arrington's opinion does not make clear the level of success experienced by Plaintiff when he "tries" to do lawn work. Information about Plaintiff's limitations in performing the

8

activities cited by Dr. Arrington is particularly relevant in light of Plaintiff's testimony that his capacity fluctuates considerably from day to day. *See* (*Id.* at 61). Without additional information, the ALJ's belief that Dr. Arrington's report was in conflict with that of Dr. Tishuk was unreasonable. *See Orta v. Comm'r of Soc. Sec.*, No. 15-6061, 2016 WL 6304437, at *6 (D.N.J. Oct. 25, 2016) (ALJ did not adequately explain his decision to discount a physician's opinion that the plaintiff was limited in his ability to walk or stand for long periods where ALJ cited activities of daily living that were not necessarily inconsistent with such limitations).[2]

The Court finds the ALJ's second argument, that Dr. Tishuk's conclusion that Plaintiff experienced marked impairment in maintaining social functioning was inconsistent with the record, to be similarly unreasonable. As evidence of Plaintiff's level of social impairment, the ALJ refers to the July 31, 2014 report of Avanente Tamagnini, Ph.D., which stated that Plaintiff "[had] friends," whom he occasionally visited. (*Id.* at 723-24). Additionally, during his hearing before the ALJ, Plaintiff was asked if he was able to get along with his wife and the people in his household. (*Id.* at 68). In response, Plaintiff stated "[w]e're okay." (*Id.*). The ALJ did not explain, however, why such evidence, indicating that Plaintiff had at least one friend and enjoyed "okay" relations with his family, was inconsistent with Dr. Tishuk's finding that Plaintiff's social functioning was markedly impaired.

Moreover, the record does not reflect that, on the occasion of his decision to provide limited weight to Dr. Tishuk's opinion, the ALJ considered record evidence indicating that Plaintiff's social functioning deteriorated between Dr. Tamagnini's report in July 2014 and the time of Dr.

---

[2]The supposed tension between the opinions of Dr. Tishuk and Dr. Arrington, moreover, is undercut by Dr. Arrington's report, which concludes that Plaintiff's condition was "consistent with psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis." (Tr. at 804).

9

Tishuk's opinion in 2016. For example, on October 6, 2014, Plaintiff was evaluated by Seth R. Stoller, M.D., who reported that during the evaluation, Plaintiff became angry and began to yell profanities so loudly that hospital security guards were summoned to his location. (*Id.* at 765). The record further indicates that at that same appointment, following the arrival of security guards, Plaintiff stated that he was calm and that if he were not calm he would have committed acts of violence against Dr. Stoller, the security guards, and his own wife. (*Id.*). Because the ALJ does not appear to have conducted a full examination of the record, the Court cannot conclude that his decision that the record evidence was in conflict with Dr. Tishuk's opinion was supported by substantial evidence. *See Greco v. Berryhill*, No. 16-7829, 2018 WL 6716840, at *4 (D.N.J. Dec. 20, 2018) (remanding where the ALJ, upon discounting a physician's opinion because of inconsistency with reports of the plaintiff's daily activities, failed to conduct a full examination of the record including the plaintiff's testimony about her limitations and related record evidence).

As for the ALJ's final statement on Dr. Tishuk's opinion ("being alert and oriented x3 and intact expressive/receptive skills, and normal thought processes"), (*id.* at 19-20), the ALJ does not explain why such findings call into question Dr. Tishuk's opinions about Plaintiff's limitations. Thus, the Court cannot offer meaningful review of this issue.[3]

---

[3] Plaintiff further argues that the opinion below does not indicate whether the ALJ considered Dr. Tishuk's status as a specialist. (ECF No. 11 at 28). When an ALJ does not give controlling weight to a medical opinion, the Commissioner's regulations direct him to consider, among other factors, whether the source of said opinion is a specialist. *See* 20 C.F.R. § 404.1527(c)(5). On remand the ALJ should take care that the record reflects that he was aware of Dr. Tishuk's specialist status and considered it when evaluating the opinion evidence.

Therefore, the Court cannot conclude that the ALJ's decision about the appropriate level of weight to provide to Dr. Tishuk's opinion was rational and supported by substantial evidence. Accordingly, the Court will remand to the ALJ for further consideration of Dr. Tishuk's opinion.[4]

### C. Plaintiff's Other Arguments

Plaintiff makes other arguments as to why the ALJ's decision should be remanded. Because the Court finds that the ALJ's opinion was not supported by substantial evidence, it will remand and need not consider such arguments at this juncture.

### V. CONCLUSION

For the foregoing reasons, the Court will vacate the ALJ's decision and remand this case for further administrative proceedings consistent with this Opinion. An appropriate Order follows.

DATED: Febuay 28, 2019

_____
CLAIRE C. CECCHI, U.S.D.J.

---

[4] The Court here notes that, on remand, the ALJ is not required to accept Dr. Tishuk's opinion or to afford it any particular weight. The ALJ is merely required to provide a rational explanation for the level of weight given to said opinion. *See Plummer*, 186 F.3d at 429 ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.").